IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MANUEL B. HERNANDEZ,           § | |
|     Plaintiff,           § | |
| § | |
| v.           § | Civil Action No. 3:15-CV-3102-BK |
| § | |
| CAROLYN W. COLVIN,           § | |
|     Defendant.           § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the parties' consent to proceed before the United States magistrate judge, Doc. 9, the Court now considers Plaintiff's *Motion for Summary Judgment*. Doc. 19. Defendant has filed a brief in opposition to Plaintiff's motion, in which she seeks affirmance of her administrative decision.[1] Doc. 20 at 7. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 19, is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND**

    **a.   Procedural Background**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner denying his applications for disability insurance benefits and supplemental security income under the Social Security Act ("The Act"). Plaintiff filed his applications in 2012, alleging a disability onset date of August 7, 2012. Doc. 15-6 at 17-32. After the applications were twice denied, he requested an administrative hearing. Doc. 15-4 at 6-11, 13-18, 19-29, 30-40; Doc. 15-3 at 12. On February 13, 2014, a hearing was held before an administrative law judge ("ALJ"). Doc. 15-3 at 34-61. The ALJ issued an unfavorable decision

---

[1] In so doing, Defendant failed to comply with the Court's *Scheduling Order* requiring that her response be in the form of a cross motion for summary judgment, Doc. 16 at 2, and N.D. TEX. L. CIV. R. 9.1, requiring that, unless otherwise ordered, "all parties to actions filed under 42 U.S.C. § 405(g) must file motions for summary judgment."

finding Plaintiff not disabled.  Doc. 15-3 at 13-29.  The Appeals Council denied Plaintiff's request to review the ALJ's decision, Doc. 15-3 at 2-4, which became the final decision of the Commissioner.

### b.  Factual Background

On his claimed disability onset date, Plaintiff was 64 years old, with an eighth grade education.  Doc. 15-3 at 40; Doc. 15-6 at 17.  He previously worked as a maintenance supervisor at Edgewood Apartments for eleven years.  Doc. 15-3 at 42.  Prior to working for Edgewood, Plaintiff worked at Village Apartments repairing air conditioners.  Doc. 15-3 at 43.

*Plaintiff's Testimony*

At the administrative hearing held on February 13, 2014, Plaintiff testified that he stopped working in August 2012 because he experienced "a lot of headaches."  Doc. 15-3 at 44. Before that, he had a "small" accident at work that required him to be hospitalized for four days. Doc. 15-3 at 44.  The accident occurred while Plaintiff was checking on a damaged engine inside of an air conditioning unit, when the lid where the engine sat fell on Plaintiff's head.  Doc. 15-3 at 44.  Unable to sleep, Plaintiff went to the hospital the day after the accident, where he was given shots and pills to relieve his pain.  Doc. 15-3 at 44-45.  Plaintiff further testified that after he was discharged from the hospital, he started to experience constant pain in his waist, shoulders, back, leg, and knees, which subsided when he took pain medication.  Doc. 15-3 at 45.

Plaintiff testified that, in addition to the pain medication, he takes medication for high blood pressure, hypothyroidism, an enlarged heart, and insomnia.  Doc. 15-3 at 45-46, 48.  Also, as a result of his insomnia, Plaintiff only sleeps two to five hours a night and feels weak or tired the next day.  Doc. 15-3 at 46-47.

Plaintiff explained that he has "problems" with his vision in both eyes and suffers from cataract in his right eye.  Doc. 15-3 at 47-48.  He is "able to hear a little bit out of [his] left ear and nothing out of [his] right ear."  Doc. 15-3 at 48.  Plaintiff also testified that he could walk one and a half blocks, stand for ten to fifteen minutes, and sit for 30 to 40 minutes, before having to stop due to waist, knee, and leg pain.  Doc. 15-3 at 49.

*Medical Records Chronology*

On June 28, 2010, Plaintiff had an audiogram to evaluate his hearing loss, which had begun suddenly on January, 5, 2009.  Doc. 15-8 at 3-4.  During the examination, Plaintiff indicated that he could not hear out of his right ear and had difficulty hearing his supervisor at work.  Doc. 15-8 at 5.  The doctor recommended Plaintiff get hearing aids for both ears and "avoid employment requiring sudden response to auditory signal."  Doc. 15-8 at 7.

On August 8, 2012, Plaintiff was seen in the emergency room of Texas Health Presbyterian Hospital in Kaufman, Texas, for vomiting and a headache that had lasted four days.  Doc. 15-8 at 14.  Plaintiff complained that the pain was gradual, worsening, and constant since onset, and was located "all around [his] head and sometimes in [his neck]."  Doc. 15-8 at 14.  After receiving oral medication for the pain and nausea, Plaintiff was discharged in stable condition.  Doc. 15-8 at 15-16.  The following day, Plaintiff returned complaining of fatigue, decreased appetite, and nausea that had lasted a couple of days.  Doc. 15-8 at 18.  The doctor suspected that Plaintiff's symptoms were likely the result of a viral illness and possible dehydration.  Doc. 15-8 at 19.  Plaintiff subsequently received fluids and nausea medication and was again discharged in stable condition.  Doc. 15-8 at 19-20.

On August 10, 2012, Plaintiff was seen by Dr. Sergio Figueroa, M.D., for complaints of headaches, nausea, and vomiting, and Dr. Figueroa noted that Plaintiff was "supposed to take

3

medication for high blood pressure…but apparently [had] not taken it for some time." Doc. 15-8 at 42. Plaintiff did not report any trauma or other cause for his headache. Doc. 15-8 at 44. After noting that Plaintiff's symptoms appeared to be worsening, Dr. Figueroa admitted him to the hospital, started him on intravenous fluids, and ordered a CT scan. Doc. 15-8 at 44. The CT scan of Plaintiff's head revealed a "[h]igh right sided frontal; parietal subdural hematoma" associated with "minimal subarachnoid hemorrhage overlying the frontal parietal lobes." Doc. 15-8 at 40. The chest exam revealed an enlarged heart, low lung volumes, and moderate compression deformity of the L1 lateral view. Doc. 15-8 at 41. Plaintiff was discharged on August 14, 2012, and diagnosed with acute subdural hematoma, hypertension, bradycardia, hyperglycemia, and borderline hypothyroidism. Doc. 15-8 at 46. Dr. Figueroa directed Plaintiff to "stay off work for at least two weeks" and refrain from lifting anything heavier than ten pounds. Doc. 15-8 at 47.

On August 23, 2012, Plaintiff was seen at Ophthalmology Associates with complaints of blurry vision. Doc. 15-8 at 23. The doctor noted that Plaintiff "may benefit from cataract surgery" and recommended evaluation by a general neurologist. Doc. 15-8 at 23, 27.

On September 4, 2012, Plaintiff saw Dr. Amir Torabi, M.D., to follow up on his abnormal CT scan results. Doc. 15-8 at 50, 52. Plaintiff again denied receiving any trauma to his head. Doc. 15-8 at 50. Dr. Torabi noted Plaintiff's history of an intracranial hemorrhage over his right lobe and recommended an MRI to rule out an underlying brain lesion, and gave Plaintiff the go-ahead to have cataract surgery. Doc. 15-8 at 51.

On December 5, 2012, Plaintiff saw Dr. Shashank K. Dengle, M.D., for a complete evaluation of his medical issues and a referral to an ophthalmology specialist. Doc. 15-8 at 90. Plaintiff denied experiencing any headaches, vision problems, dizziness, nausea, or vomiting.

Doc. 15-8 at 90. Plaintiff was found to have controlled high blood pressure, but prostatic hyperplasia, a keloid in his umbilicus, fungal dermatitis on both feet, and cataracts. Doc. 15-8 at 91. Dr. Dengle advised Plaintiff to maintain a low-salt diet and continue his anti-hypertensive medication. Doc. 15-8 at 91.

On February 19, 2013, Plaintiff saw Dr. James Gray, M.D., for a consultative eye examination. Doc. 15-8 at 77. Dr. Gray indicated that he expected a good prognosis once Plaintiff had surgery to remove the nuclear cataract from his right eye. Doc. 15-8 at 78.

On February 28, 2013, at the request of the Texas Rehabilitative Commission, Plaintiff saw Dr. David Okumbor, M.D., for an internal medicine consultative examination. Doc. 15-8 at 85. Dr. Okumbor found that Plaintiff had: (1) good coordination and motion of hands and fingers; (2) good grip strength and the ability to reach, handle, finger, and feel; (3) good breath sounds without assistance, and (4) a normal gait and good heel, toe and tandem walking. Doc. 15-8 at 87. He also determined that: (1) Plaintiff could only squat while holding on to furniture and complained of knee pain when he did; (2) Plaintiff could hop but was limited by hip pain; (3) Plaintiff could flex his spine 100 degrees on a vertical axis but was unable to touch his toes due to his back pain; (4) Plaintiff's left shoulder showed anterior joint tenderness; (5) Plaintiff experienced pain on flexion and abduction of the arm above shoulder level; and (6) Plaintiff was able to sit, stand, move about, lift, carry, handle objects, hear and speak well. Doc. 15-8 at 86-87. Dr. Okumbor also noted Plaintiff's history of acute subdural hematoma, chronic back, knee and left shoulder pain, compression fracture of L1 vertebral body, mild obesity, and hypertension. Doc. 15-8 at 87.

Plaintiff revisited Dr. Dengle on February 14, 2013, May 16, 2013, September 19, 2013, and January 28, 2014, for complaints of hypertension, erectile dysfunction, benign prostatic

hyperplasia, fungal dermatitis, upper respiratory infection, arthritis, insomnia, and hypothyroidism. Doc. 15-8 at 98-101; Doc. 15-9 at 2-3, 11-12. At each visit, Plaintiff was advised to take his medication and maintain a low salt diet. Doc. 15-8 at 99-101; Doc. 15-9 at 2-3, 11-12. Dr. Dengle also noted that Plaintiff experienced no side effects from his medications. Doc. 15-8 at 99-101; Doc. 15-9 at 3, 12.

*ALJ's Findings*

In April 2014, the ALJ issued a decision unfavorable to Plaintiff. The ALJ concluded that Plaintiff had the severe impairments of minor degenerative disc disease of the lumbar spine and borderline obesity, Doc. 15-3 at 21, but did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment, Doc. 15-3 at 26. The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. Doc. 15-3 at 26-27. The ALJ further found that Plaintiff had the ability to sit, stand and/or walk for a total of six hours in an eight-hour workday with normal breaks, provided that he be permitted to stand for a few minutes once each hour to stretch and alleviate the pain from sitting. Doc. 15-3 at 27. The ALJ determined that Plaintiff's ability to perform the full range of medium work is reduced by his inability to climb ramps and stairs, stoop and kneel on more than a frequent basis, climb ropes or scaffolds, crouch, or crawl, or to climb ladders on more than an occasional basis. Doc. 15-3 at 27. The ALJ found that Plaintiff could attend and concentrate for two consecutive hours, interact frequently with supervisors, co-workers, and the general public, and respond appropriately to change in a routine work environment, but that he should avoid employment requiring a sudden response to an auditory signal. Doc. 15-3 at 27. Lastly, the ALJ concluded that Plaintiff was

capable of performing his past relevant work as an air conditioning repairman and, therefore, was not disabled.  Doc. 15-3 at 28-29.

## II. APPLICABLE LAW

Judicial review of the Commissioner's denial of benefits is limited to determining if the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920 (b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## III. ANALYSIS

Plaintiff argues that (1) the ALJ's RFC was not supported by substantial evidence because it failed to include all limitations resulting from Plaintiff's impairments, and (2) the ALJ's conclusion that Plaintiff has the ability to perform a limited range of medium work is not consistent with the evidence of record.[2] Doc. 19-1 at 4. Defendant responds that the ALJ considered the entire record, including the objective medical evidence and Plaintiff's subjective complaints, in determining that Plaintiff could perform a range of medium work. Doc. 20 at 2-3.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to work on a sustained basis in an ordinary job setting despite his impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is the most that a claimant is

---

[2] The Act defines "medium work" as that which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567.

able to do, notwithstanding his physical and mental limitations. 20 C.F.R. § 404.1545(a). The ALJ considers a claimant's RFC, along with his age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 404.1520(f). The sole responsibility for evaluating a claimant's RFC, based on the record as a whole, falls to the ALJ, who also is tasked with resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

A review of the record in this case reveals that the ALJ's RFC finding is supported by substantial evidence. Although Plaintiff contends that his impairments prevent him from performing medium work on a sustained basis, he mainly cites in support his own testimony and the notations of his subjective complaints contained in the medical records. Doc. 19-1 at 5. While "the ALJ must consider subjective evidence of pain as testified to by the claimant," *Scharlow v. Schweiker,* 655 F.2d 645, 648 (5th Cir. 1981), it is nonetheless "within the discretion of the [ALJ] to determine the disabling nature of pain." *Jones v. Heckler,* 702 F.2d 616, 621–22 (5th Cir. 1983). In this case, Plaintiff argues the RFC should contain restrictions in his lifting, sitting, standing, and walking -- to the extent that he is unable to perform medium work on a sustained basis, Doc. 19-1 at 5, however, the medical records he on which he relies, neither support nor suggest the requirement of work limitations to accommodate any condition. *See, e.g.,* Doc. 15-8 at 3 (Audiogram Test Results); Doc. 15-8 at 6, 77-80 (Otological Examination Report); Doc. 15-8 at 23-28 (Ophthalmology Medical Report); Doc. 15-8 at 34, 54, 61, 70 (Medical Reports from Dr. Figueroa regarding Plaintiff's subdural hematoma making no reference to work limitations); Doc. 15-8 at 40-41, 63 (Plaintiff's head CT and chest X-Ray Final Reports making no reference to work limitations); Doc. 15-8 at 46 (Discharge Summary from Dr. Figueroa making no reference to work limitations); Doc. 15-8 at 51 (Evaluation of head CT

making no reference to work limitations); Doc. 15-8 at 84, 89, 93 (Chest X-Ray and Cardiology Examination making no reference to work limitations). Indeed the only specific limitation suggested in the medical records is that, in relation to his hearing loss, Plaintiff should "avoid employment requiring sudden response to auditory signal." Doc. 15-8 at 7. That limitation was specifically incorporated by the ALJ in the RFC. Doc. 15-3 at 27.

Moreover, except for Plaintiff's hearing loss (for which hearing aids was prescribed) and pain (which is relieved by medication without significant side effects), Doc. 15-8 at 98-101; Doc. 15-9 at 2-3, 11-12, the medical records do not suggest any long-term or untreatable medical condition. *See Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987) (a claimant must demonstrate that he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted for a continuous period of months) (quoting 42 U.S.C. § 423(d)(1)(A) (1983)); *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").

Conversely, during Dr. Okumbor's internal medicine consultative examination of Plaintiff, he noted Plaintiff's complaints of pain, but also that Plaintiff had good coordination, hand and finger motion and grip strength, could flex his spine 100 degrees on a vertical axis, and was able to sit, stand, move about, lift, carry, handle objects, hear and speak well. Doc. 15-8 at 87. Plaintiff himself reported that he is able to engage in normal activities of daily living, including walking, dressing and bathing, and helping to care for his children. Doc. 15-7 at 24, 26.

Thus, considering the record as a whole, the applicable standard of review, as well as the ALJ's responsibility to evaluate a claimant's RFC and resolve any conflicts in the evidence, the

Court finds the ALJ's RFC is supported by substantial evidence. See Leggett, 67 F.3d at 564 (substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). That is not the case here.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 19, is **DENIED** and the Commissioner's decision is **AFFIRMED**.

**SIGNED** on August 31, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE